UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| | X | |
| IN RE BAYOU HEDGE FUNDS INVESTMENT LITIGATION | : | No. 06 MDL 1755 (CM) |
| | : | |
| | X | |
| THIS DOCUMENT RELATES TO: | | |
| | X | |
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, ET AL., Individually and on Behalf of All Other Persons and Entities Similarly Situated, | : : : | No. 06 Civ. 3026 (CM) |
| Plaintiffs, | : : | |
| - against - | : : | |
| BAYOU GROUP LLC, ET AL., | : | |
| Defendants. | : | |
| | X | |
| BROAD-BUSSEL FAMILY LIMITED PARTNERSHIP, ET AL., Individually and on Behalf of All Other Persons and Entities Similarly Situated, | : : : : | No. 07 Civ. 2026 (CM) |
| Plaintiffs, | : : | |
| - against - | : : | |
| | : | **ORAL ARGUMENT REQUESTED** |
| HENNESSEE GROUP LLC, ET AL., | : | |
| Defendants. | : | ELECTRONICALLY FILED |
| | X | |

## MEMORANDUM OF LAW IN SUPPORT OF BROAD-BUSSEL PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

BERGER & MONTAGUE, P.C.
Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA 19103-6305
Telephone: (215) 875-3000
Fax: (215) 875-4604

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT 06604
Telephone: (203) 336-4421
Fax: (203) 368-3244

*Attorneys for Broad-Bussel Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... ii-iv

INTRODUCTION ............................................................ 1

SUMMARY OF RELEVANT FACTS ............................................. 2

    A.    The Bayou Hedge Fund Fraud ...................................... 2

    B.    The Hennessee Defendants Held Themselves Out as Highly
Experienced and Competent Hedge Fund Experts ....................... 6

    C.    The Hennessee Defendants Served as Investment Advisors
and Fiduciaries for Plaintiffs and the Hennessee Subclass .................. 7

    D.    The Hennessee Defendants Fail to Conduct Proper Due
Diligence and Monitoring ........................................... 7

ARGUMENT .............................................................. 8

I.     THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED ..................... 10

    A.    Numerosity ...................................................... 10

    B.    Commonality .................................................... 12

    C.    Typicality ....................................................... 15

    D.    Adequacy ....................................................... 17

II.    THE REQUIREMENTS OF RULE 23(b) ARE SATISFIED .................... 18

    A.    The Class and Hennessee Subclass Meet the Criteria of Rule 23(b)(3) ....... 18

        1.    Predominance ............................................... 19

        2.    Superiority ................................................. 20

    B.    The Class Meets the Criteria of Rules 23(b)(1)(A) and (B) ................. 22

CONCLUSION ........................................................... 25

## TABLE OF AUTHORITIES

*Federal Cases*

Amchem Products, Inc. v. Windsor,
    521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997) . . . . . . . . . . . . . . . . . 17, 19, 23

In re AMF Bowling Secs. Litig.,
    No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949
    (S.D.N.Y. Mar. 26, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Arakis Energy Corp. Sec. Litig.,
    No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246
    (S.D.N.Y. Apr. 30, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,
    222 F.3d 52 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Barlow v. Marion County Hosp. Dist.,
    88 F.R.D. 619 (M.D. Fla. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    105 F.R.D. 506 (S.D. Ohio 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re Blech Sec. Litig.,
    187 F.R.D. 97 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Cromer Fin. Ltd. v. Berger,
    205 F.R.D. 113 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

Demarco v. Edens,
    390 F.2d 836 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

DeMarco v. National Collector's Mint, Inc.,
    229 F.R.D. 73 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Drexel Burnham Lambert Group,
    960 F.2d 285 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Eisen v. Carlisle & Jacquelin,
    417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fogarazzo v. Lehman Bros.,
       232 F.R.D. 176 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Global Crossing Sec. & ERISA Litig.,
       225 F.R.D. 436 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Grant v. Sullivan,
       131 F.R.D. 436 (M.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gulf Oil Co. v. Bernard,
       452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Iglesias-Mendoza v. La Belle Farm, Inc.,
       239 F.R.D. 363 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

In re Initial Pub. Offering Sec. Litig.,
       21 MC 92 (SAS), 01 Civ. 3020 (SAS),
       2007 U.S. Dist. LEXIS 19632 (S.D.N.Y. Feb. 28, 2007) . . . . . . . . . . . . . . . . . . . . . . 9

In re Initial Public Offering Sec. Litig.,
       471 F.3d 24 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kennedy v. Tallant,
       710 F.2d 711 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lively v. Dynegy, Inc.,
       No. 05-cv-00063-MJR, 2007 U.S. Dist. LEXIS 14794
       (S.D. Ill. Mar. 2, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Novella v. Westchester County,
       443 F. Supp. 2d 540 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

People United for Children, Inc. v. New York,
       214 F.R.D. 252 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Philadelphia Electric Co. v Anaconda American Brass Co.,
       43 F.R.D. 452 (E.D. Pa. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Robidoux v. Celani,
       987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Rodgers v. United States Steel Corp.,
       508 F.2d 152 (3d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Veeco Instruments, Inc., Sec. Litig.,
        235 F.R.D. 220 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 19

In re VisaCheck/MasterMoney Antitrust Litig.,
        280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

Wade v. Indus. Funding Corp.,
        No. 92-0343 (TEH), 1993 WL 594019 (S.D.N.Y. Dec. 14, 1993) . . . . . . . . . . . . . . . . 11

### Federal Rules

Fed. R. Civ. P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 42(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

### Other Authorities

7A Wright, Miller & Kane, Federal Practice & Procedure, § 1778 . . . . . . . . . . . . . . . . . . . . . . . 19

## INTRODUCTION

Plaintiffs Broad-Bussel Family Limited Partnership ("Broad-Bussel Family"), Caroline B. Glass ("Glass"), Marie-Louise Michelsohn, Michelle Michelsohn and Herbert Blaine Lawson, Jr. (collectively, the "Plaintiffs" or the "Broad-Bussel Plaintiffs"), respectfully submit this Memorandum in support of their Motion for Class Certification in accordance with Fed. R. Civ. P. 23. Plaintiffs seek to certify a class consisting of all similarly situated investors who, during the period between December 31, 1996 and August 25, 2005 (the "Class Period"), purchased or maintained investment interests in one or more of the Bayou family of hedge funds (the "Bayou Hedge Funds"), and were damaged thereby (the "Class").[1] Plaintiffs further seek to certify a subclass consisting of all Class members who, during the Class Period, were advised to invest, or were placed, in the Bayou Hedge Funds pursuant an investment advisory relationship with the Hennessee Group LLC, and suffered damages thereby (the "Hennessee Subclass" or "Subclass"). Certification of the Class and Subclass is particularly appropriate in the circumstances here where, by definition, all similarly situated investors were damaged by the Bayou fraud.

---

[1]    By Order filed on May 15, 2007, the Court consolidated the above captioned actions Broad-Bussel Family Limited Partnership, et al. v. Bayou Group LLC, et al., 06 CV 3026 (CM) (S.D.N.Y.) and Broad-Bussel Family Limited Partnership, et al. v. Hennessee Group LLC, et al., 07 CV 2026 (CM) (S.D.N.Y.), pursuant to Fed. R. Civ. P. 42(a) and Southern District of New York Local Rule 15(a).

**SUMMARY OF RELEVANT FACTS**[2]

A.    **The Bayou Hedge Fund Fraud**

Throughout the Class Period, defendants Samuel Israel, III ("Israel"), Daniel Marino

("Marino") and James G. Marquez ("Marquez") solicited, sold and operated the Bayou Hedge

Funds -- a family of hedge funds based in Stamford, Connecticut, including the Bayou Super

Fund, LLC, Bayou No Leverage Fund, LLC, Bayou Affiliates Fund, LLC, Bayou Accredited

Fund, LLC, Bayou Offshore Fund, LLC, and Bayou Fund, LLC. ¶ 2. The Bayou Hedge Funds

were operated by their principals, defendants Israel, Marino and Marquez, and numerous related

defendant entities including Bayou Group LLC, Bayou Management LLC, Bayou Securities

LLC, Bayou Securities, LTD, Bayou Partners LLC, Bayou Affiliates, LLC, Bayou Equities, LLC,

IM Partners and IMG, LLC (collectively, with the Bayou Hedge Funds, "Bayou" or the "Bayou

Defendants"). ¶¶ 17-30. Accord Compendium, Exhs. A and B (Bayou organizational charts).

Although touted and sold as legitimate investment vehicles, the Bayou entities were

almost since their inception actually being operated as a cohesive, massive financial sham and

Ponzi scheme, with defendant Israel acting as Bayou's CEO and Chief Investment Officer and

Marino as its CFO. ¶¶ 2, 73, 124. Accord Trout Decl. at ¶¶ 7-28; Compendium, Exh. N (Bayou

debtors' bankruptcy filing), at pp. 22-23. Specifically, Israel and Marino, along with Marquez,

fraudulently lured investors during the Class Period to invest and maintain hundreds of millions

---

[2]    The facts are taken from plaintiffs' Amended Complaint, 06 CV 3026 (CM),
("Amended Complaint"), citations to which are referenced as " ¶ ___"; and relevant documents
attached to the accompanying Compendium of Documents in Support of the Broad-Bussel
Plaintiffs' Motion for Class Certification ("Compendium"), and the Declaration of Dr. Robert R.
Trout, Ph.D., CFA (the "Trout Decl.") and Declaration of Lane L. Vines (the "Vines Decl."), all
of which are filed contemporaneously herewith in support of the Broad-Bussel Plaintiffs' Motion
for Class Certification.

2

of dollars in Bayou, through a scheme of improper acts and continuing misrepresentations and omissions regarding Bayou's business practices and financial results, operations and condition. ¶¶ 86-88. Accord Trout Decl. at ¶¶ 15-18. Misstatements about Bayou were made to the Class via weekly newsletters, monthly reports, quarterly reports, annual reports and investor conference calls, all of which portrayed that Bayou was being operated properly and in accordance with the law. ¶ 60. Accord Trout Decl. at ¶¶ 15-19.

On or about July 27, 2005, defendant Israel sent Class member investors, including Plaintiffs, a letter that abruptly announced that the Bayou Hedge Funds would be closed at the end of July 2005. ¶ 64. Accord Trout Decl. at ¶ 10. During the next couple of weeks, defendant Israel sent Class member investors additional letters discussing the status of winding up the Bayou Hedge Funds and promising to return promptly all funds to the respective Class member investors. ¶¶ 65-68.

On August 25, 2005, however, the financial press began to reveal that Bayou had long been operated as a fraud, with its principals having misappropriated millions of Class member investor dollars. ¶ 1. Accord Compendium, Exh. N, at pp. 22-23. That day, *The New York Times* shocked Class members and other investors by reporting that "[s]tate and federal officials in Connecticut are investigating the possible collapse of the Bayou Group, a hedge fund and brokerage firm in Stamford that managed an estimated $400 million for its investors". ¶¶ 7, 69. On August 27, 2005, *The New York Post* reported that federal agents had seized boxes of records and other material from Bayou's offices in Stamford, Connecticut, amid fears that up to $500 million of its investors' money has "disappeared". ¶ 70. During the course of the Class Period, Plaintiffs and members of the Class invested more than $450 million in the Bayou Hedge Funds.

3

Since the Bayou Hedge Funds publicly collapsed on August 25, 2005, none of the members of the Class or Hennessee Subclass has received back from Bayou or otherwise any of his, her or its invested funds. ¶ 8. Accord Trout Decl. at ¶ 10; Compendium, Exh. N, at pp. 23.

Significantly, moreover, it was simply not possible for the Bayou fraud to have been accomplished without the active and substantial participation -- and gross negligence -- of third parties, including, in particular, investment advisor Hennessee Group LLC and its principals Elizabeth Lee Hennessee and Charles Gradante (collectively, the "Hennessee Defendants") (¶ 5); Bayou's banker, Citibank, N.A.; Bayou's lawyers, Steven D. Oppenheim and his firm Faust Rabbach & Oppenheim LLP (the "Oppenheim Defendants"); and other Bayou-related principals including Jeffrey Fotta and his companies Eqyty Research and Management, LLC and Eqyty Research and Management, LTD (the "Fotta Defendants") (collectively with defendant Marquez, the "Aider/Abettor Defendants"), who allegedly provided research to Bayou.[3] ¶¶ 3-4.

In addition, numerous investigations and litigations have been commenced by state and federal agencies, and Bayou's principals, defendants Israel, Marino and Marquez, have all pleaded guilty to multiple criminal counts, and face prison sentences. ¶¶ 2, 8, 85. Accord Compendium, Exhs. E, F and G (criminal plea transcripts). Moreover, on May 30, 2006, the Bayou Hedge Funds and most all of the related Bayou entities filed for protection under the

---

[3]     Collectively, the Bayou Defendants, Aider/Abettor Defendants and Hennessee Defendants are referenced as the "Defendants". By Orders entered September 6, 2006 and January 18, 2007, the Court granted motions to dismiss filed by defendants Citibank, N.A. and the Oppenheim Defendants, respectively. The motion to dismiss filed by the Hennessee Defendants was granted in part and denied in part by Order entered January 19, 2007, and the Hennessee Defendants subsequently filed answers in both of the above consolidated actions. The Fotta Defendants and defendant Marquez also answered Plaintiffs' operative Amended Complaint. The Bayou Defendants have not filed Answers; however, on May 30, 2006, most all of the Bayou related entities filed for protection under the federal bankruptcy laws.

federal bankruptcy laws (the "Bayou debtors"). That litigation is docketed in jointly administered proceedings as In re Bayou Group, LLC, et al., Chapter 11, Case No. 06-22306 (ASH) (Bankr. S.D.N.Y.). On June 13, 2007, the Bayou debtors filed in those bankruptcy proceedings a proposed Disclosure Statement that attached their Joint Chapter 11 Plan of Reorganization. See Compendium, Exh. N.

In May 2005, the Arizona Attorney General seized some $101 million from several Wachovia Bank accounts in Flemington, New Jersey (the "Seized Funds"). On September 28, 2005, the Arizona Superior Court entered a final Order of Forfeiture relating to those accounts, and the Seized Funds were placed under the supervision and control of the Arizona Attorney General. On September 1, 2005, the U.S. Attorney for the Southern District of New York commenced a civil forfeiture action to recover the Seized Funds. After the Federal Bureau of Investigation submitted facts sufficient to demonstrate "that the Seized Funds belong to investor creditors of the [Bayou] Debtors and the [Bayou] Offshore Funds, the Arizona Superior Court directed that the Seized Funds of some $106 million be transferred to the United States Marshals Service." See Compendium, Exh. N, at p. 25. Filings by the U.S. Attorney state that the government plans to distribute on a *pro rata* basis the Seized Funds and other forfeited property (collectively, the "Forfeited Property") to defrauded Bayou investors, including presumably the Class members here. Id. ("Any distribution of Forfeited Property will made by the United States, and not by the [Bayou] Debtors."). Indeed. certification of the Class here can greatly facilitate the process of distributing the Seized Funds.[4]

---

[4]    Plaintiffs' counsel have been in contact with representatives from the U.S. Attorney's Office and have offered to assist and to coordinate any such distributions subject to the approval of the Court.

5

**B.    The Hennessee Defendants Held Themselves Out as Highly Experienced and Competent Hedge Fund Experts**

In 1997, defendants Lee Hennessee and Charles Gradante co-founded the Hennessee Group, a registered investment adviser and New York limited liability company based in New York City. ¶¶ 39-41. Since that time, both Lee Hennessee and Gradante have served as the Managing Principals of the Hennessee Group. ¶¶ 40-41. In sum, the Hennessee Defendants advise hedge fund investors on asset allocation, manager selection, ongoing monitoring of hedge fund managers and asset reallocation. ¶¶ 39, 93. As a result of their positions and roles as principals and officers of the Hennessee Group, defendants Lee Hennessee and Gradante dominated and controlled the business operations and practices of the Hennessee Group, which is essentially the alter ego of Lee Hennessee and Gradante. ¶¶ 5, 94, 113.

In holding themselves out to the investing community, including the members of the Hennessee Subclass, the Hennessee Defendants touted themselves not only as highly experienced and competent experts, but as self-proclaimed "pioneers" in hedge fund consulting. ¶ 89. For example, the Hennessee Group website further proclaimed that, "[W]e have the expertise and experience to provide clients with a range of investment advisory services, which integrates portfolio size, objectives and suitability." ¶ 91. Among other things, the Hennessee Group touted its services based on supposedly superior research, due diligence and monitoring services, claiming that it provide clients with various research tools: "Performance analytics; Comparative analyses; Manager newsletters and interviews; Risk assessments; Due diligence reports; [and] Monthly client statement 'monitors'". ¶ 92.

6

**C.    The Hennessee Defendants Served as Investment Advisors and Fiduciaries for Plaintiffs and the Hennessee Subclass**

During the Class Period, the Hennessee Defendants entered into fiduciary relationships with plaintiff Broad-Bussel Family and each of the members of the Hennessee Subclass to provide investment advisory services. ¶¶ 43, 195. In connection with those relationships, members of the Hennessee Subclass executed Investment Advisory Agreements with the Hennessee Group. ¶¶ 95, 185, 187. In exchange for the Hennessee Defendants' investment advisory services, the Hennessee Defendants received advisory fees. ¶¶ 39, 179.

The Hennessee Defendants' investment advisory services included, among other things, their selecting and recommending investments for the members of the Hennessee Subclass. ¶¶ 90, 91, 93, 94, 96, 106. In making such recommendations, the Hennessee Defendants were obligated to conduct, and specifically represented that they had conducted, proper due diligence of those investments prior to recommending. ¶¶ 5, 43, 92, 93, 95, 104, 107, 111, 113, 150, 153, 157, 178, 185, 187, 195. In addition, the Hennessee Defendants were also obligated to perform ongoing monitoring of those recommended investments. ¶¶ 39, 43, 92, 93, 95, 107, 111, 113, 150, 153, 157, 178, 185, 187, 195. Nevertheless, during the Class Period, the Hennessee Defendants recommended the fraudulent Bayou Hedge Funds to plaintiff Broad-Bussel Family and members of the Hennessee Subclass, thereby facilitating investments -- and ultimately losses -- totaling in the of tens of millions of dollars by those investors. ¶ 39.

**D.    The Hennessee Defendants Fail to Conduct Proper Due Diligence and Monitoring**

In recommending the Bayou Hedge Funds to plaintiff Broad-Bussel Family and the members of the Hennessee Subclass, the Hennessee Defendants failed to perform their most

basic advisory and fiduciary obligations -- to wit, conduct proper due diligence of the Bayou

Hedge Funds and Bayou's principal officers, defendants Israel and Marino. ¶¶ 5, 43, 107, 110.

The Hennessee Defendants knew that the integrity, skill, expertise and fidelity of the Bayou

Hedge Funds, their manager, Bayou Management, and its officers were critical to a proper due

diligence analysis and recommendation of investments in the Bayou Hedge Funds. ¶ 104.

Nevertheless, the Hennessee Defendants simply ignored or failed to reveal numerous red flags

with regard to the Bayou Hedge Funds which should have been properly investigated and timely

reported to those investors, including for example (¶¶ 107, 111):

- A March 2003 civil lawsuit by a former Bayou principal, Paul Westerfelt, under Louisiana's Whistleblower Statute specifically alleging that Bayou was then engaged in "violations of S.E.C. and N.A.S.D. rules and regulations";

- The Hennessee Defendants' receipt of letter from defendant Israel in November 2003, which specifically acknowledged the Westerfelt litigation and disclosed that another Bayou employee, Ray Oelkers, had filed a similar lawsuit;

- Bayou's overt conflicts of interests, in that Bayou made securities trades through, and paid commissions to, defendant Israel's personally-owned brokerage, Bayou Securities LLC;

- New York regulatory filings showing that the owner of Richmond-Fairfield -- Bayou's supposed independent auditor -- was Bayou's CFO, defendant Marino;

- The Hennessee Defendants' complete failure to obtain any independent verification or confirmation as to the Bayou Hedge Funds' asset balances and securities transactions;

- Bayou's acknowledgment that it paid commissions and percentage of sales to several outside marketers and promoters for the Bayou Hedge Funds;

- The falsified and grossly embellished résumé of defendant Israel -- the manager and Chief Investment Officer of the Bayou Hedge Funds;

- The falsified company résumés for Bayou and the Bayou Hedge Funds;

8

- The Connecticut Banking Commissioner's September 2003 sanction of Bayou Securities for failure to keep certain records in violation of Connecticut law; and

- Bayou's unusually favorable fees and terms for the Bayou Hedge Funds, which successfully served as enticements for investors.

As a result, plaintiffs Broad-Bussel Family and Glass, and all other members of the Hennessee Subclass, were left unaware until public disclosure of the Bayou Defendants' massive fraud, and have lost millions of dollars of their invested funds.

## ARGUMENT

"Class actions serve an important function in our system of civil justice." Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 (1981). Indeed, Rule 23 expresses "a policy in favor of having litigation in which common interests, or common questions of law or fact prevail, disposed of where feasible in a single lawsuit." Rodgers v. United States Steel Corp., 508 F.2d 152, 163 (3d Cir. 1975). See also Kennedy v. Tallant, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). "To be certified, a putative class must meet all four requirements of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b)." In re Initial Pub. Offering Sec. Litig., 21 MC 92 (SAS), 01 Civ. 3020 (SAS), 2007 U.S. Dist. LEXIS 19632, at *11 (S.D.N.Y. Feb. 28, 2007).

"To avoid the risk that a Rule 23 hearing will extend into a protracted mini-trial of substantial portions of the underlying litigation, a district judge must be accorded considerable discretion to limit both discovery and the extent of the hearing on Rule 23 requirements." In re Initial Public Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006). "[T]he district judge must

9

receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23

requirement has been met." Id.  Nevertheless, as the Supreme Court held in Eisen v. Carlisle &

Jacquelin, 417 U.S. 156, 177 (1974), there is "nothing in either the language or history of Rule

23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in

order to determine whether it may be maintained as a class action.  Indeed, such a procedure

contravenes the Rule ...."  Accord In re VisaCheck/MasterMoney Antitrust Litig., 280 F.3d 124,

133 (2d Cir. 2001).

## I.    THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all only if (1) the class is so
> numerous that joinder of all members is impracticable, (2) there are
> questions of law or fact common to the class, (3) the claims or
> defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly
> and adequately protect the interests of the class.

### A.    Numerosity

Rule 23 requires a finding that numerosity makes joinder of all class members

impracticable; however, "[i]mpracticable does not mean impossible".  Robidoux v. Celani, 987

F.2d 931, 935 (2d Cir. 1993) (reversing district court and finding that plaintiffs had met all the

requirements of Fed. R. Civ. P. 23).  "Courts have not required evidence of exact class size or

identity of class members to satisfy the numerosity requirement."  Id. (citing Barlow v. Marion

County Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980) (holding that "plaintiffs must show

some evidence of or reasonably estimate the number of class members" but "need not show the

exact number").  Classes of 40 class members "should raise a presumption that joinder is

impracticable"; however, courts may properly certify classes with even much fewer members. Robidoux v. Celani, 987 F.2d at 935-36 (citing Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (holding that a court "may certify a class even if it is composed of as few as 14 members")). See also, e.g., Wade v. Indus. Funding Corp., No. 92-0343 (TEH), 1993 WL 594019, at *9 (S.D.N.Y. Dec. 14, 1993) ("[D]efendant classes have been certified with as few as 13 members."); Lively v. Dynegy, Inc., No. 05-cv-00063-MJR, 2007 U.S. Dist. LEXIS 14794, at *21 (S.D. Ill. Mar. 2, 2007) (holding that "courts have found the numerosity element satisfied where the putative class would number in the range of as few as ten to forty class members"); Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D. 506, 508 (S.D. Ohio 1985) (certifying class of 23 persons; "Paraphrasing another district court's view of the first requirement of the rule, while 23 may not be a large number when compared to other classes that have been certified, it is a large number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.") (citing Philadelphia Electric Co. v Anaconda American Brass Co., 43 F.R.D. 452 (E.D. Pa. 1968)).

"Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers." Robidoux v. Celani, 987 F.2d at 936 (citing Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968)). Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members. Id. ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they

11

may employ the class-action device.") (citation omitted). <u>See also</u> <u>Novella v. Westchester</u> <u>County</u>, 443 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2006) (holding that geographic dispersion of class members throughout only the State of New York is a factor that weighs in favor of certification).

Here, according to the Bayou defendants' own bankruptcy filings, the Class includes "hundreds" of similarly defrauded investors, who are geographically dispersed. <u>See</u> Compendium, Exh. N at p.23 ("Despite this assurance [of returning investors' principal investment], the Debtors did not repay any additional money to investor creditors. Instead, all of the funds comprising the Bayou Hedge Funds were gone and hundreds of investor creditors were left without any repayment their investment principal."). <u>Accord</u> Trout Decl. at ¶¶ 10, 21. The Hennessee Subclass of those investors includes at least some twenty-nine such investors, who are likewise geographically dispersed throughout the United States, as evidenced by advisory agreements that were received from the Hennessee Defendants in discovery. <u>Accord</u> Trout Decl., at ¶¶ 29-31.

It is indisputable that it would be impracticable to join all members of the Class and Hennessee Subclass for purposes of prosecuting their claims here. The number of investors at issue, their geographical dispersion, the judicial economies in avoiding a multiplicity of actions, and the cost efficiencies that may be realized by the parties clearly militate the appropriateness for class treatment in the circumstances.

**B.    Commonality**

Rule 23(a)(2) requires that there be some question of law or fact common to the class. "So long as the class shares at least one question of fact or law, the commonality requirement is

met." <u>People United for Children, Inc. v. New York</u>, 214 F.R.D. 252, 257-58 (S.D.N.Y. 2003) (finding requirement satisfied where plaintiffs' injuries "derive from a unitary course of conduct" ... "even though the individual situations of class members differ"). <u>Accord</u> <u>In re Global Crossing Sec. & ERISA Litig.</u>, 225 F.R.D. 436, 451-52 (S.D.N.Y. 2004). Indeed, "[c]ommonality is not defeated by slight differences in class members' positions or because 'all of the allegations do not fit together like pieces in a jigsaw puzzle.'" <u>In re Veeco Instruments, Inc., Sec. Litig.</u>, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (McMahon, J.) (citation omitted). "In other words, "[i]t is not necessary that all of the questions raised by arguments are identical; it is sufficient if a single common issue is shared by the class." <u>Id.</u> (citation omitted).

Here, although touted and sold as legitimate investment vehicles, the Bayou Hedge Funds were almost since their inception in 1996 actually being operated as a single massive financial sham and Ponzi scheme. <u>See generally</u> Trout Decl., at ¶¶ 7-28. As evidenced by criminal guilty pleas and other admissions from Bayou's principals, the Bayou Defendants lured investors during the Class Period to invest and maintain hundreds of millions of dollars in Bayou through a scheme of improper acts and continuing misrepresentations and omissions regarding Bayou's business practices and financial results, operations and condition. <u>Accord</u> Trout Decl., at ¶¶ 15-18 (citing Marino's self-titled "confession and suicide note" and the criminal pleas of defendants Israel, Marino and Marquez). <u>See also</u> Compendium Exhs. D, E, F and G. Misstatements about Bayou were made to all similarly situated Class member investors via weekly newsletters, monthly reports, quarterly reports, annual reports and investor conference calls -- all of which portrayed that Bayou was being operated properly and in accordance with the law. <u>Accord</u> Trout Decl., at ¶¶ 15-19.

13

Here, there are multiple common questions of both law and fact which are susceptible to class-wide proof, including:

(a)     whether the Defendants' acts and omissions violated the law as alleged;

(b)     whether the Bayou Defendants defrauded Plaintiffs and the Class through several sham hedge funds that they orchestrated and operated;

(c)     whether the Bayou Defendants misappropriated property of the Plaintiffs and the Class;

(d)     whether the Bayou Defendants engaged in fiduciary and other breaches of obligations owed to Plaintiffs and the Class;

(e)     whether the Aider/Abettor Defendants aided and abetted the Bayou Defendants' misconduct as alleged;

(f)     whether the reports and other statements disseminated by the Bayou Defendants to the Plaintiffs and the Class misrepresented or omitted material facts about the financial results, operations and condition of the Bayou Hedge Funds;

(g)     whether Class members should be entitled to share ratably in accordance with their damages in any remaining proceeds of the Bayou Defendants and other Bayou Hedge Fund proceeds; and

(h)     whether the Plaintiffs and the Class have sustained damages and, if so, the extent of such damages.

The commonality requirement is also met as to the Hennessee Subclass because those investors entered into standard investment advisory agreements that obligated the Hennessee Defendants to provide due diligence and on-going monitoring of Subclass member investments,

14

including concerning the Bayou Hedge Funds. Accord Trout Decl., at ¶¶ 29-31. The Hennessee Defendants' failure to provide such due diligence and on-going monitoring resulted in each of the members of the Hennessee Subclass to be similarly injured through their investments in the fraudulent Bayou Hedge Funds. Id. (discussing Hennessee's standard investment advisory agreements, samples of which are attached as Compendium, Exh. M).

Accordingly, there are multiple common questions of law and fact as to the Hennessee Subclass which are susceptible to class-wide proof, including:

(a)    whether the acts and omissions of the Hennessee Defendants violated the law as alleged;

(b)    whether the Hennessee Defendants engaged in fiduciary and other breaches of obligations owed, respectively, to plaintiff Broad-Bussel Family and to the other members of the Hennessee Subclass;

(c)    whether the Hennessee Defendants failed to investigate properly Bayou and the Bayou Hedge Funds prior to recommending investments in the Bayou Hedge Funds;

(d)    whether the Hennessee Defendants failed to monitor properly the Hennessee Subclass' investments in Bayou and the Bayou Hedge Funds; and

(e)    whether the plaintiff Broad-Bussel Family and the other members of the Hennessee Subclass have sustained damages and, if so, the extent of such damages.

## C.    Typicality

"The typicality requirement of Rule 23(a)(3) is satisfied 'if the claim of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members.'" DeMarco v. National Collector's Mint, Inc., 229 F.R.D. 73, 80

(S.D.N.Y. 2005) (McMahon, J.) ("Since each member of the class purchased the same product, is suing under the same act, and likely desire the same relief ... , the typicality requirement is satisfied.") (citation omitted). "The typicality requirement 'is not demanding.'" Fogarazzo v. Lehman Bros., 232 F.R.D. 176, 180 (S.D.N.Y. 2005) (holding typicality is satisfied "if the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members").

Here, Plaintiffs' claims arise from the same practice and course of conduct giving rise to the claims of the entire Class -- namely, Defendants' fraudulent operation of the Bayou Hedge Funds which similarly duped all Class members into investing and maintaining their investments in those sham entities. Accord Trout Decl., at ¶¶ 9-14, 20, 23-28; Compendium, Exh. N, at p.24. Similarly, the claims of the Hennessee Subclass arise from the Hennessee Defendants' misconduct in advising certain of the Class members to invest in Bayou -- failing to conduct basic due diligence and on-going monitoring of the Bayou Hedge Funds that they were obligated to do under the Hennessee's standard investment advisory agreements. Accord Trout Decl., at ¶¶ 29-31.

Indeed, the only real difference in the claims is likely to be the actual amount of damages each Class member suffered. However, this has never been a bar to certify a class. Moreover, Class member damages here may uniformly be measured by the net investment principal of each Class member that has not been returned since the public collapse of the funds in August 2005. See Trout Decl., at ¶¶ 10, 14, 20-21, 27 (discussing that Class member damages are measured by that investor's net investment in the Bayou Hedge Funds). In any event, differences in damages

16

"do[] not preclude a showing of typicality, nor defeat class certification." In re VisaCheck/MasterMoney Antitrust Litig., 280 F.3d at 136.

### D.    Adequacy

Rules 23(a)(4) and 23(g) require that Plaintiffs demonstrate that the proposed action will fairly and adequately protect the interests of the class. "This requires a two-part inquiry: (1) whether plaintiff's interests are antagonistic to the interest of other members of the class, and (2) whether plaintiff's attorneys are qualified, experienced and able to conduct the litigation." In re Veeco Instruments, Inc., Sec. Litig., 235 F.R.D. at 239 (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)).

"A class representative must 'possess the same interest and suffer the same injury as the class members.'" Cromer Fin. Ltd. v. Berger, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997). Moreover, "[t]he adequacy-of-representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a), which 'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Amchem Products, Inc. v. Windsor, 521 U.S. at 626 n.20. Accord Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 375 (S.D.N.Y. 2007) (finding adequacy of counsel under Rule 23(g); "[counsel] has diligently identified and pursued the claims in this action to date").

Here, these requirements are easily satisfied because Plaintiffs' interests are squarely aligned with the other members of the Class and Subclass they seek to represent, and Plaintiffs'

17

selected counsel are adequate to prosecute this litigation. The representatives of the proposed

Class are: Broad-Bussel Family Limited Partnership, which invested $1,250,000 in the Bayou

Superfund; Caroline B. Glass, who invested $1,140,000 in the Bayou Accredited Fund;

Marie-Louise Michelsohn and Michelle Michelsohn, who collectively invested $2,600,000 in the

Bayou Superfund and Bayou Accredited Fund; and Herbert Blaine Lawson, Jr., who invested

$500,000 in the Bayou Superfund. Each proposed Class representative has the same interests as

other members of the Class in, simply stated, holding Defendants liable for, and maximizing the

recoveries and other relief in connection with, the claims asserted, as their accompanying

Declarations attest. See Vines Decl., at Exh. A to E. In addition, Plaintiffs' choice of the

undersigned counsel have extensive experience in litigating class actions and other complex

litigations. See Vines Decl, Exh. F (attaching firm biographies of Berger & Montague, P.C. and

Koskoff, Koskoff & Bieder, P.C.).

## II.    THE REQUIREMENTS OF RULE 23(b) ARE SATISFIED

In addition to the four requirements of Rule 23(a), Plaintiffs must also fulfill at least one

of the requirements of Rule 23(b). Under Rule 23(b), a class may proceed as an "incompatible

standards" class under Rule 23(b)(1)(A); as a "limited fund" class under Rule 23(b)(1)(B); or as a

class where common issues predominate under Rule 23(b)(3). In the circumstances of this

litigation, Plaintiffs seek certification under each of these provisions.

### A.    The Class and the Hennessee Subclass Meet the Criteria of Rule 23(b)(3)

Rule 23(b)(3) requires that common questions "predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair

and efficient adjudication of the controversy." Both of these requirements are met here.

18

1.    **Predominance**

The predominance inquiry tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. at 623. "In determining whether common questions predominate, a court's inquiry is directed toward whether the issue of liability is common to the members of the class." In re Veeco Instruments, Inc., Sec. Litig., 235 F.R.D. at 240 (citing In re Blech Sec. Litig., 187 F.R.D. 97, 107 (S.D.N.Y. 1999)). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." Id. ("If the liability issue is common to the class, common questions are held to predominate over individual questions."). Predominance does not require that common issues take up more than half of the total time at trial; rather, it is a "pragmatic" inquiry into whether there is a common nucleus of operative facts to each member's claim. 7A Wright, Miller & Kane, Federal Practice & Procedure, § 1778, at pp. 527-28. As the Supreme Court has noted, "Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." Amchem Prods. v. Windsor, 521 U.S. at 625.

Common issues indisputably predominate here. This action is dominated by the Class-wide issues, in sum, of whether the Bayou Defendants orchestrated and conducted a massive hedge fund fraud against the Class' whether the Aider/Abettor Defendants wrongly facilitated that misconduct; and whether the Hennessee Defendants wrongly steered certain of the Class members into investing in the Bayou fraud. Accord Trout Decl., at ¶¶ 14, 19, 22, 31-32. Here, the members of the Class all invested in the Bayou Hedge Funds through Bayou's standard Subscription Documents, received the various funds' standard and false Operating Agreements, and were issued the same false reports as to the supposed performance of the various Bayou

19

funds. Accord Trout Decl., at ¶¶ 7-9, 12-14, 19-20, 22-26; Compendium, Exh. N, at p.24.

Indeed, the Bayou Defendants have admitted that all of those performance reports were fictitious

and that the Bayou Hedge Funds were never profitable. Accord Trout Decl., at ¶¶ 10, 15-18, 27;

Compendium, Exh. N, at p.24. Instead, the Bayou Defendants have admitted that the Bayou

Hedge Funds were essentially operated as a single Ponzi scheme almost since inception. Accord

Trout Decl., at ¶¶ 11, 15-18, 27; Compendium, Exh. N, at pp. 4, 20-23.

Similarly, the members of the Hennessee Subclass each entered into a standard

investment advisory agreement with Hennessee Group LLC. Accord Trout Decl., at ¶¶ 29-31.

As a result, each of the Hennessee Defendants owed the same fiduciary and other duties to those

investors, and each of those Hennessee Defendants violated those duties as a result of their

failure to perform due diligence and monitoring of the Bayou Hedge Funds. Id.

## 2.    **Superiority**

The proposed Class is also superior to individual litigation. Rule 23(b)(3) lists four

factors that the Court should consider each of which supports a finding of superiority here: the

interest of Class members in individually controlling the prosecution or defense of separate

actions; the extent and nature of any litigation concerning the controversy already commenced by

or against members of the Class; the desirability or undesirability of concentrating the litigation

of the claims in the particular forum; and the difficulties likely to be encountered in the

management of the class action.

Indeed, "were plaintiffs required to bring individual actions, the potential for duplicative

litigation and consequent waste of judicial and party resources would be significant." In re

Arakis Energy Corp. Sec. Litig., No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *38

(S.D.N.Y. Apr. 30, 1999). <u>Accord</u> <u>In re Blech Sec. Litig.</u>, 187 F.R.D. at 107 (superiority

requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient"); <u>In re AMF</u>

<u>Bowling Secs. Litig.</u>, No. 99 Civ. 3023 (DC), 2002 U.S. Dist. LEXIS 4949, at *26 ("For each

investor to litigate individually 'would risk disparate results among those seeking redress, . . .

would exponentially increase the costs of litigation for all, and would be a particularly inefficient

use of judicial resources.'") (citation omitted).

     The decision in <u>Cromer Fin. Ltd. v. Berger</u> is particularly apt.  In <u>Cromer</u>, 205 F.R.D. at

134, Judge Cote found that relatively few of the hedge fund investors had initiated individual

litigation, "even though they are all concededly 'sophisticated' investors".  In finding a class

action to be the fair and efficient adjudication of the controversy, Judge Cote held (<u>id.</u> at 133):

> The potential class members are both significant in number and
> geographically dispersed.  The interest of the class as a whole in
> litigating the many common questions substantially outweighs any
> interest by individual members in bringing and prosecuting
> separate actions.  To force each investor to litigate separately
> would risk disparate results among those seeking redress, would
> encourage a race to judgment given the limited funds available to
> fund recovery here, would exponentially increase the costs of
> litigation for all, and would be a particularly inefficient use of
> judicial resources.

     Here, as in <u>Cromer</u>, there are at least hundreds of Class members, the vast majority of

which have not chosen to initiate individual litigation, especially in circumstances where the

primary wrongdoers, the Bayou Defendants, have filed for bankruptcy or are otherwise

apparently insolvent.  <u>Accord</u> Trout Decl., at ¶¶ 6, 10, 21, 27-31.  <u>See also</u> Compendium, Exh. N,

at p. 27 ("As of the [bankruptcy] Petition Date, the Debtors did not have any cash-on-hand or

other real, personal, or other property.  The Debtors' only assets as of the Petition Date were, and

21

continue to be, the Debtor's legal claims against third parties and the proceeds from such claims."). Moreover, the expense and legal hurdles that those investors would face in trying to hold liable third parties such the Aider/Abettor Defendants and the Hennessee certainly further dissuades those Class member investors from pursuing legal claims in the circumstances here. See f/n 3, *supra*. Nevertheless, Class members have lost significant sums of money and this litigation may be the only practical means for many of those investors to even attempt to redress the violations alleged.

Notably also, the Plaintiffs and their counsel recognized early on that it was appropriate to consolidate the Bayou litigation in a single forum, and they successfully moved the Judicial on Multidistrict Litigation to enter an Order (dated April 18, 2006) to transfer this action and other Bayou-related actions to a single forum. Finally, Plaintiffs do not expect to encounter any difficulties in managing this case as a class action.

At bottom, certifying this litigation as a class action makes eminent sense precisely because it provides the only realistic basis for putative members of the Class and Hennessee Subclass to try to vindicate their rights. Class certification is also infinitely better than the alternative – namely, leaving the hundreds of investor putative Class members, each of whom has already lost significant investment funds, to pursue costly individual actions, which would then expend exponentially and unnecessarily scare judicially resources.

**B.    The Class Meets the Criteria of Rules 23(b)(1)(A) and (B)**

Class certification as to the Bayou Defendants is also appropriate in this case under Rule 23(b)(1)(A) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members

22

which could establish incompatible standards of conduct for Defendants. Plaintiffs contend that the misconduct of the Bayou Defendants damaged hundreds of investors, and that the misconduct of the Aider/Abettor Defendants facilitated that fraud. Plaintiffs also contend that the Hennessee Defendants breached their obligations to the Hennessee Subclass in failing to conduct proper due diligence and monitoring as to the Bayou Hedge Funds investments that recommended. Absent a single adjudication as to the alleged misconduct of the various Defendants, the prosecution of separate actions by the individual Class members would most certainly present a significant risk of the courts imposing inconsistent or varying standards in adjudicating these Defendants' alleged misconduct. Accordingly, these claims are well-suited for certification under Rule 23(b)(1). See, e.g., Amchem Products, Inc. v. Windsor, 521 U.S. at 614 ("Rule 23(b)(1)(A) 'takes in cases where the party is obligated by law to treat the members of the class alike.'") (citation omitted).

The Class here also meets the criteria for certification under Rule 23(b)(1)(B) because prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to adjudications, or substantially impair or impede their ability to protect their interests.

Similar to the circumstances in In re Drexel Burnham Lambert Group, 960 F.2d 285 (2d Cir. 1992), the fraudulent investment funds at issue are wholly insolvent. "There are many plaintiffs trying to maximize their own recovery, and there is a defendant with a limited fund to satisfy all claims." Id. at 292-93. As set forth in their Prayer for Relief (see Amended Class Action Complaint, No. 06 Civ. 3026 (CM)), the Broad-Bussel Plaintiffs here seek an Order from

23

the Court "directing that all funds traceable to the Bayou Hedge Funds be placed in a

constructive trust and distributed ratably to Plaintiffs and the members of the Class and the

Hennessee Subclass consistent with such investors' damages." Those Bayou Hedge Funds and

other the related Bayou Defendants have filed bankruptcy and are insolvent -- such that any claim

on those assets by a Class member would be at the expense of all other Class member investors.

See id. at 292 ("Because Drexel is in bankruptcy, its assets will not be distributed on the "first

come, first served" basis that usually warrants class treatment under Rule 23(b)(1)(B)....

However, even though Drexel's assets will not be distributed to claimants until final approval of

Drexel's reorganization plan, some members of the putative class might attempt to maintain

costly individual actions in the hope and, perhaps, the belief that their claims are more

meritorious than the claims of other class members. A mandatory class action under Rule

23(b)(1)(B) is thus necessary here to prevent claimants with such motivations from unfairly

diminishing the eventual recovery of other class members.").

      Accordingly, certification as a mandatory non-opt out Class is appropriate under Federal

Rule 23(b)(1)(A) as to the Class' claims against the Bayou Defendants because inconsistent or

varying adjudications with respect to individual Class members would establish incompatible

standards of conduct regarding the Bayou Defendants' alleged culpability to the Class. Second,

certification as a mandatory non-opt out Class is appropriate under Federal Rule 23(b)(1)(B)

because adjudications with respect to individual members of the Class would as a practical

matter be dispositive of the interests of the other members not parties to the adjudications or

substantially impair or impede their ability to protect their interests. Certification of the Class

claims against the Bayou Defendants as a mandatory non-opt out Class is particularly appropriate

24

here given, among other things, the limited funds the Bayou Defendants reportedly have, the fact

that a judgment in favor of the Plaintiff Class may substantially exceed the Bayou Defendants'

available assets, and the some $101 million in investor proceeds reportedly seized by the Arizona

Attorney General and forfeited to the United States Attorney which are beneficially owned by,

and should be distributed ratably to, Class member investors in accordance with their respective

damages. Indeed, Plaintiffs understand that the U.S. Attorney for the Southern District of New

York will seek to distribute the $101 million in seized proceeds, together with other proceeds the

Government may collect from the Bayou Defendants, ratably to injured investors in accordance

with their losses. Class certification as a mandatory non-opt out Class as to the claims against

the Bayou Defendants will provide an efficient, cost-effective way for the parties to coordinate

with the U.S. Attorney and distribute such proceeds to injured investors fairly and expeditiously

in accordance with their respective losses. Plaintiffs seek a mandatory non-opt out Class only as

to the Class' claims against the Bayou Defendants. Plaintiffs seek to certify the Class under

Federal Rule 23(b)(3) as to all other claims against the Hennessee Defendants and the

Aider/Abettor Defendants, with Class members free to opt out and pursue their own claims

against such parties as the Court may determine.

## CONCLUSION

Plaintiffs request respectfully that the Court certify the Class and Hennessee Subclass in

this litigation in accordance with Fed. R. Civ. P. 23.

Dated:  July  16 , 2007
        New York, NY

Respectfully Submitted,

BERGER & MONTAGUE, P.C.


 /s/  Merrill G. Davidoff
Merrill G. Davidoff, Esq.
Lawrence J. Lederer, Esq.
Lane L. Vines, Esq.
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

KOSKOFF, KOSKOFF & BIEDER, P.C.
William M. Bloss, Esq.
Neal A. DeYoung, Esq.
350 Fairfield Avenue
Bridgeport, CT  06604
Telephone:  (203) 336-4421
Fax:  (203) 368-3244

*Attorneys for Broad-Bussel Family Limited
Partnership, Caroline B. Glass, Marie-Louise
Michelsohn, Michelle Michelsohn and Herbert
Blaine Lawson, Jr.*

417259_02.wpd