# EXHIBIT J

AMENDED AND RESTATED OPERATING AGREEMENT OF

BAYOU ACCREDITED FUND, L.L.C.

A DELAWARE LIMITED LIABILITY COMPANY

F:\1676-102\Accredited.010
mvk/02/07/03

# AMENDED AND RESTATED OPERATING AGREEMENT OF
# BAYOU ACCREDITED FUND, L.L.C.
# A DELAWARE LIMITED LIABILITY COMPANY

## Table of Contents

| Article | Description | Page |
|---|---|---|
| 1.1 | Definitions | 1 |
| 2.1 | Name | 5 |
| 2.2 | Principal Place of Business | 5 |
| 2.3 | Registered Office and Registration Agent | 5 |
| 2.4 | Term | 6 |
| 3.1 | Permitted Businesses | 6 |
| 4.1 | Names and Addresses of Members | 8 |
| 4.2 | Certificates | 8 |
| 5.1 | Management | 8 |
| 5.2 | Number, Tenure, and Qualifications | 8 |
| 5.3 | Certain Powers of Manager | 8 |
| 5.4 | Liability for Certain Acts | 11 |
| 5.5 | Conflicts of Interest | 11 |
| 5.6 | Manager Has No Exclusive Duty to the Company | 11 |
| 5.7 | Bank Accounts | 13 |
| 5.8 | Indemnification of the Manager, Employees, and Other Agents | 13 |
| 5.9 | Resignation | 13 |
| 5.10 | Removal | 13 |

| | | |
|---|---|---|
| 5.11 | Vacancies | 13 |
| 5.12 | Compensation and Expenses | 14 |
| 5.13 | Anti-Money Laundering Program | 14 |
| 6.1 | Limitation of Liability | 15 |
| 6.2 | Company Debt Liability | 15 |
| 6.3 | List of Members | 15 |
| 6.4 | Company Books | 15 |
| 6.5 | Priority and Return of Capital | 15 |
| 6.6 | Liability of a Member to the Company | 15 |
| 7.1 | Annual Meeting | 16 |
| 7.2 | Special Meetings | 16 |
| 7.3 | Place of Meetings | 16 |
| 7.4 | Notice of Meetings | 16 |
| 7.5 | Meeting of All Members | 16 |
| 7.6 | Record Date | 16 |
| 7.7 | Quorum | 17 |
| 7.8 | Manner of Acting | 17 |
| 7.9 | Proxies | 17 |
| 7.10 | Action by Members Without a Meeting | 18 |
| 7.11 | Waiver of Notice | 18 |
| 7.12 | Deemed Consent | 18 |
| 8.1 | Members' Capital Contributions | 18 |
| 8.2 | Additional Contributions | 18 |
| 8.3 | Capital Accounts | 18 |

| | | |
|---|---|---|
| 8.4 | Transfer of Interest in a Related Fund | 20 |
| 9.1 | Allocations of Profits and Losses from Operations | 21 |
| 9.2 | Special Allocations to Capital Accounts | 21 |
| 9.3 | Distributions | 25 |
| 9.4 | Limitation Upon Distributions | 25 |
| 9.5 | Accounting Principles | 26 |
| 9.6 | Interest on and Return of Capital Contributions | 26 |
| 9.7 | Loans to Company | 26 |
| 9.8 | Accounting Period | 26 |
| 9.9 | Records, Audits, and Reports | 26 |
| 9.10 | Returns and Other Elections | 26 |
| 10.1 | Withdrawals by Members | 27 |
| 10.2 | Withdrawals by the Manager | 27 |
| 10.3 | Withdrawal on Certain Conditions | 28 |
| 10.4 | Payment to Withdrawing Member | 28 |
| 10.5 | Mandatory Withdrawal of Members | 29 |
| 11.1 | Assignment | 29 |
| 11.2 | Void Assignment | 29 |
| 11.3 | Substituted Member | 29 |
| 11.4 | Effect of Assignment | 30 |
| 11.5 | Effect of Death, Etc. | 30 |
| 12.1 | Admission to Membership | 30 |
| 12.2 | Financial Adjustments | 31 |
| 13.1 | Dissolution | 31 |

| | | |
|---|---|---|
| 13.2 | Winding Up, Liquidation, and Distribution of Assets | 32 |
| 13.3 | Articles of Dissolution | 33 |
| 13.4 | Return of Contributions Nonrecourse to Other Members and Economic Interest Owners | 34 |
| 14.1 | Notices | 34 |
| 14.2 | Books of Accounts and Records | 34 |
| 14.3 | Application of Delaware Law | 34 |
| 14.4 | Waiver of Action for Partition | 35 |
| 14.5 | Amendments | 35 |
| 14.6 | Execution of Additional Instruments | 35 |
| 14.7 | Construction | 35 |
| 14.8 | Headings | 35 |
| 14.9 | Waivers | 35 |
| 14.10 | Rights and Remedies Cumulative | 35 |
| 14.11 | Severability | 35 |
| 14.12 | Heirs, Successors, and Assigns | 36 |
| 14.13 | Creditors | 36 |
| 14.14 | Counterparts | 36 |
| 14.15 | Rule Against Perpetuities | 36 |
| 14.16 | Investment Representations | 36 |

F:\1676-102\Accredited.010
mvk/02/07/03                                iv

**AMENDED AND RESTATED OPERATING AGREEMENT OF
BAYOU ACCREDITED FUND, L.L.C.
a Delaware Limited Liability Company**

## ARTICLE 1

### Definitions

1.1 <u>Definitions</u>. The following terms used in this Operating Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a) "Accumulated Net Losses" shall mean the total of all prior fiscal periods' net losses allocated to a Member or Economic Interest Owner reduced by any subsequent allocation of net profits allocated to such Member or Economic Interest Owner.

(b) "Adjusted Balance of Its Capital Account" shall mean the account of a Member or Economic Interest Owner reduced at the sole discretion of the Manager at time of withdrawal of said capital account in whole or in part by any amount not in excess of three-quarters of one percent (0.75%) of the amount to be withdrawn for reasonable legal, accounting and administrative costs associated with or related to the withdrawal.

(c) "Articles of Organization" shall mean the Articles of Organization as filed with the Secretary of State of Delaware, as the same may be amended from time to time.

(d) "BSA" shall mean the Bank Secrecy Act (31 U.S.C. §5311 et seq.), as amended, or corresponding provisions of any superseding federal laws.

(e) "Capital Account" as of any given date shall mean the Capital Contribution to the Company by a Member or Economic Interest Owner as adjusted up to the date in question pursuant to Article 8.

(f) "Capital Contribution" shall mean any contribution to the capital of the Company in cash or property by a Member or Economic Interest Owner whenever made. "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to this Operating Agreement.

(g) "Capital Interest" shall mean the proportion that the positive Capital Account of a Member or Economic Interest Owner bears to the aggregate positive Capital Accounts of all Members and Economic Interest Owners whose Capital Accounts have positive balances, as may be adjusted from time to time, and as will be adjusted under the circumstances and in the manner described in Section 8.3(e).

(h) "Company" shall refer to Bayou Accredited Fund, L.L.C.

(i) "Deficit Capital Account" shall mean with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the taxable year, after giving effect to the following adjustments:

  (i) Credit to such Capital Account any amount which such Member is obligated to restore under Treas. Reg. §1.704-1(b)(2)(ii)(c), as well as any addition thereto pursuant to the next to last sentence of Treas. Reg. §§1.704-2(g)(1) and (i)(5), after taking into account thereunder any changes during such year in "partnership minimum gain" (as determined in accordance with Treas. Reg. §1.704-2(d)) and in the minimum gain attributable to any "partner nonrecourse debt" (as determined under Treas. Reg. §1.704-2(i)(3)); and

  (ii) Debit to such Capital Account the items described in Treas. Reg. §§1.704-1(b)(2)(ii)(d)(4), (5) and (6).

  (iii) This definition of Deficit Capital Account is intended to comply with the provision of Treas. Reg. §§1.704-1(b)(2)(ii)(d) and 1.704-2, and will be interpreted consistently with those provisions.

(j) "Distributable Cash" means all cash, revenues, and funds received by the Company from Company operations, less the sum of the following to the extent paid or set aside by the Company:

  (i) All principal and interest payments on indebtedness of the Company and all other sums paid to lenders;

    (ii) All cash expenditures incurred incident to the normal operation of the Company's business;

    (iii) Such Reserves as the Manager deems reasonably necessary to the proper operation of the Company's business.

  (k) "Economic Interest" shall mean the share of a Member or Economic Interest Owner of one or more of the Company's Net Profits, Net Losses, and distributions pursuant to this Operating Agreement and the Delaware Limited Liability Act, but shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision of the Members or Manager.

  (l) "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

  (m) "Eligible Net Profits" shall mean that portion of the current fiscal period's Net Profits allocated to a Member or Economic Interest Owner that exceeds said Member's or Economic Interest Owner's share of accumulated Net Losses.

  (n) "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative or association, or any foreign trust, or foreign business organization.

  (o) "Fiscal Year" shall mean the Company's fiscal year, which shall end on December 31st of each year.

  (p) "Initial Member" shall mean any Member of the Company as of the date hereof as listed on Exhibit A.

  (q) "IRC" shall mean the Internal Revenue Code of 1986, as amended, or corresponding provisions of subsequent superseding federal revenue laws.

  (r) "Majority Interest" shall mean one or more Membership Interests which taken together exceed eighty percent (80%) of the aggregate of all Membership Interests.

  (s) "Manager" shall mean one or more managers. Specifically, "Manager" shall mean Bayou Management, LLC, a limited liability company with its principal office located at 40 Signal Road, Stamford, Connecticut 06902, or any other person or persons

that succeed it in that capacity. References to the Manager in the singular or as either or both of them or other like references shall also, when the context so requires, be deemed to include the plural or the masculine or feminine reference, as the case may be.

(t)  "Member" shall mean each of the parties who executes a counterpart of this Operating Agreement as an Initial Member and each of the parties who may hereafter become Members. To the extent a Manager has purchased Membership Interests in the Company, he will have all the rights of a Member with respect to such Membership Interests, and the term "Member" as used in this Operating Agreement shall include a Manager if and to the extent that, he has purchased such Membership Interests in the Company. If a Person is a Member immediately before the purchase or other acquisition by such Person of an Economic Interest, that Person shall have all the rights of a Member with respect to the purchased or otherwise acquired Membership Interest or Economic Interest, as the case may be.

(u)  "Membership Interest" shall mean a Member's entire interest in the Company including the Member's Economic Interest and the right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Operating Agreement and the Delaware Act.

(v)  "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions, and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with Generally Accepted Accounting Principles applied on a consistent basis.

(w)  "Operating Agreement" shall mean this Operating Agreement as originally executed and as amended from time to time.

(x)  "Persons" shall mean any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of the "Person" when the context so permits.

(y)  "Related Fund" shall mean any fund, company, investment, partnership or other such entity managed by the Manager.

(z) "Representative" shall mean the executor, administrator, guardian, trustee or other personal representative of a deceased, incompetent, or bankrupt Member.

(aa) "Reserves" shall mean, for any fiscal period, funds set aside or amounts allocated during such period to reserves that shall be maintained in amounts deemed sufficient by the Manager for working capital and to pay taxes, insurance, debt service, or other costs or expenses incident to the ownership or operation of the Company's business.

(bb) "Securities" shall have the meaning ascribed to such term in Section 3.1(a).

(cc) "Securities Act" shall have the meaning ascribed to such term in Section 14.16(a)(i).

(dd) "Substituted Member" shall mean an assignee of a Membership Interest who is substituted as a Member in accordance with Article 11.

(ee) "Treasury Regulations" shall include proposed, temporary, and final regulations promulgated under the IRC or the BSA in effect as of the date of filing the Articles of Organization and the corresponding sections of any regulations subsequently issued that amend or supersede those regulations.

## ARTICLE 2
### Formation of Company

2.1  <u>Name</u>.  The name of the Company is Bayou Accredited Fund, L.L.C.

2.2  <u>Principal Place of Business</u>.  The principal place of business of the Company within the State of Connecticut shall be at 40 Signal Road, Stamford, Connecticut 06902.  The Company may locate its places of business and registered office at any other place or places as the Manager may from time to time deem advisable.

2.3  <u>Registered Office and Registration Agent</u>.  The Company's initial registered office shall be at the office of its registered agent at 488 Madison Avenue, New York, New York 10022, and the name of its initial registered agent at such address shall be Faust Rabbach & Oppenheim, LLP.  The registered office and registered agent may be changed from time to time by filing the address of the new registered office and/or the name of the new

registered agent with the Delaware Secretary of State pursuant to the Delaware Act.

2.4 <u>Term</u>. The term of the Company shall be twenty (20) years from the date of filing of Articles of Organization with the Secretary of State of the State of Delaware (the "Initial Term"), unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the Delaware Act; provided, however, that the Initial Term may be extended by the Manager for up to three (3) additional one (1) year periods if the Manager deems such extension necessary for the orderly liquidation of the assets of the Company.

## ARTICLE 3
## Business of Company

3.1 <u>Permitted Businesses</u>. The business of the Company shall be:

(a) to purchase, invest, trade and sell, whether a long or short position, on margin or otherwise, in capital stock, subscriptions, warrants, bonds, notes, debentures, convertible securities, rights, options, puts and calls relating thereto and other securities (both equity and debt) of companies (all such items being herein "Securities").;

(b) to purchase, invest, trade and sell, whether a long or short position, on margin or otherwise, financial instruments, indices and derivatives (all such items being included in the definition of "Securities" in (a) above, as appropriate);

(c) to engage in such other lawful Securities and Commodities transactions as the Manager may from time to time deem appropriate for the Company. The Manager will also be the manager of other investment vehicles, and will advise customers and other accounts with the same investment objectives as the Company. When effecting transactions for the Company, the Manager may, and most likely will, also be effecting similar or identical transactions for such other investment vehicles, customers and accounts (and may also be doing so for its own account and for the account of its affiliates). In each such case, the Manager will endeavor to treat the Company and all other investment vehicles and other customers and accounts on an essentially pro-rata basis in, among other things, effecting purchases and sales and allocating commissions and brokerage fees. However, in some instances, parity will be difficult or impractical and the Company may pay more, or receive less or pay greater commissions and fees when buying, selling or

otherwise effecting transactions than such other investment vehicles, customers or accounts which are buying or selling in otherwise effecting similar or even identical transactions. For all purposes hereof, none of the foregoing shall be deemed unlawful, improper or inconsistent with the Manager's obligations to the Company;

(d) to possess, transfer or otherwise deal in, and to exercise all rights, powers privileges and other incidents of ownership or possession with respect to, Securities, Commodities and other property and funds held or owned by the Company with the objectives of the preservation, protection, improvement or enhancement in value thereof;

(e) to lend any of its properties or funds with adequate security;

(f) to have and maintain one or more offices within or without the State of Delaware and incur such expenses as may be necessary or advisable in connection with the maintenance of such office or offices and the conduct of the business of the Company;

(g) to open, conduct and close accounts, including margin and discretionary accounts, with brokers and/or dealers, and to pay the commissions, fees and other charges applicable to transactions in all such accounts, without regard to whether or not the Manager or its Principals are affiliated, related or employed by such brokerage firm and receive compensation from said firm as a registered representative, or otherwise, which compensation may be based, in whole or in part, on revenue received by such brokerage firm from transactions for or with the Company, with the understanding that such commissions payable to said firm and mark-ups charged by said firm are not independently negotiated;

(h) to enter into, make and perform all contracts, agreements and undertakings, pay all costs and expenses and engage in all activities and transactions as may be necessary or advisable to the carrying out of the foregoing objects and purposes;

(i) to engage in all activities necessary, customary, convenient, or incident to any of the foregoing;

(j) to exercise all other powers reasonably connected with the Company's business that may be exercised by a limited liability company under the Delaware Act; and

(k) to accomplish any lawful business for the protection or benefit of the Company or its assets.

## ARTICLE 4
## Initial Membership

4.1  Names and Addresses of Members. The names and addresses of the Initial Members are set forth on Exhibit A attached hereto. Exhibit A may be supplemented from time to time as Membership Interests in the Company are sold.

4.2  Certificates. Membership Interests in the Company may be evidenced by certificates in a form approved by the Manager.

## ARTICLE 5
## Rights and Duties of the Manager

5.1  Management. The business and affairs of the Company shall be managed by its Manager. The Manager shall direct, manage, and control the business of the Company. Except for situations in which the approval of the Members is expressly required by this Operating Agreement or by nonwaivable provisions of applicable law, the Manager shall have full and complete authority, power, and discretion to manage and control the business, affairs, and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. At any time when there is more than one Manager, any one Manager may take any action permitted to be taken by the Manager, unless the approvals of more than one of the Managers is expressly required pursuant to this Operating Agreement or the Act.

5.2  Number, Tenure, and Qualifications. The Company shall initially have one Manager. The number of Managers of the Company shall be fixed from time to time by the affirmative vote of Members holding at majority interest, but in no instance shall there be less than one Manager. Each Manager shall hold office until the next annual meeting of Members at which or until a successor shall have been elected and qualified. Managers shall be elected by the affirmative vote of Members holding a majority interest. Managers need not be residents of the State of Connecticut or Members of the Company.

5.3  Certain Powers of Manager. Without limiting the generality of Section 5.1 above, the Manager shall have power and authority, on behalf of the Company to: